UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CONNOR GRIFFITH-GUERRERO,<br><br>                 Plaintiff,<br><br>     v.<br><br>SPOKANE COUNTY, DEPUTY<br>ROBERT BROOKE, and DEPUTY<br>EVAN LOGAN,<br><br>               Defendants. | NO:  2:15-CV-0342-TOR<br><br>ORDER RE: CROSS MOTIONS FOR<br>SUMMARY JUDGMENT AND<br>MOTION TO EXCLUDE |

BEFORE THE COURT are Plaintiff's Motion for Summary Judgment (ECF No. 20), Defendants' Motion for Summary Judgment (ECF No. 25), and Defendants' Motion and Memorandum to Exclude Plaintiff's Expert Testimony (ECF No. 23). These matters were submitted without oral argument.  The Court has reviewed all the briefing and files herein, and is fully informed.

## BACKGROUND

This action involves alleged violations by Spokane County and its deputies of

the Fourth Amendment, applicable to the States through the Fourteenth Amendment.[1]

*See* ECF No. 1.  Plaintiff, Connor Griffith-Guerrero, filed a Complaint against Defendants Spokane County, Deputy Robert Brook, and Deputy Evan Logan under 42 U.S.C. § 1983.  *Id.*  Plaintiff alleges that Defendants trespassed on Plaintiff's property and conducted an unlawful search and seizure without a warrant or probable cause.  *Id.*  Plaintiff also asserts state law claims of intentional infliction of emotional distress, assault and battery, unlawful imprisonment, false arrest, and negligence.  *Id.*  This Court has jurisdiction over Plaintiff's 42 U.S.C. § 1983 claims pursuant to the federal question jurisdiction statute, 28 U.S.C. § 1331, and pendant jurisdiction of the remaining state law claims under the supplemental jurisdiction statute, 28 U.S.C. § 1367(a).

Plaintiff moves for summary judgment against all Defendants on his Fourth

---

[1]    The Supreme Court has instructed that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process [under the Fourteenth Amendment], must be the guide for analyzing these claims."  *Tarabochia v. Adkins*, 766 F.3d 1115, 1129 (9th Cir. 2014) (citation omitted).  The Fourth Amendment explicitly protects against unreasonable "searches and seizures" so the claims here are analyzed under that Amendment.

Amendment claims.  ECF No. 20 at 1, 17.  Defendants move for summary judgment on all claims.  ECF No. 25.

**FACTS**

The following facts are gleaned from the parties' submissions and are principally undisputed, but where there is a dispute the Court recites the evidence through a lens favorable to the opposing party.  As this matter has not proceeded to trial, these are not findings of fact carrying consequences collateral to this decision.

On December 10, 2013 at 8:30 p.m., police dispatch received a call from Plaintiff's neighbor reporting a suspicious vehicle parked at 1310 W. North Five Mile Road.  ECF No. 21 at ¶ 3.  At that time, Plaintiff and his mother lived at 1308 W. North Five Mile Road, and the concerned neighbor resided at 1306 N. Five Mile Road.  *Id.* at ¶ 1.  Deputies Robert Brooke ("Deputy Brooke") and Evan Logan ("Deputy Logan") (collectively, the "Deputies") were dispatched to 1310 W. North Five Mile Road to investigate.  *Id.* at ¶ 3.  Prior to their arrival, dispatch advised the Deputies that the vehicle left the area.  *Id.* at ¶ 5.  Neither could locate 1310 W. North Five Mile Road upon arrival, and both suspected that the correct location was actually Plaintiff's address, 1308 W. North Five Mile Road, because of tire tracks in the snow on the lower driveway.  *Id.* at ¶ 8.

Plaintiff has two driveways, one on each side of the home.  *Id.* at ¶ 2.  The lower paved driveway is accessible from Five Mile Drive and leads to a garage and

an enlarged rounded parking area that opens to the back of the home.  *Id.*; *see also* ECF No. 22-4 at 48-49.  The upper driveway is located off of a common dirt road that leads to homes located at 1306 and 1310 W. Five Mile Road.  ECF No. 21 at ¶ 2.

The pathway to Plaintiff's front porch and back door were both unobstructed and freely accessible from either side of the lower driveway.  ECF No. 22-4 at 44-46, 48-49.  The front porch is accessible via a set of stairs and concrete walkway from the lower driveway.  *See* ECF No. 22-4 at 44, 46, 49.  However, the record shows that nothing physically prevents invitees from walking from the lower driveway and parking area to the French doors located in the middle of the back of the home.  Moreover, Deputy Logan testified that the French doors looked like an entrance that somebody would normally use to enter the home.  ECF No. 22-2 at 20 (14:13-20; 15:8-9), 25 (40:11-20).

 

ECF No. 22-4 at 48-49 (left photograph showing walkway to the left (front) of the home and right photograph showing lower driveway opening to French doors in back

of home).

The Deputies suspected a potential burglary at Plaintiff's home due to the vehicle report, tire tracks, and because the home initially appeared dark. ECF No. 21 at ¶¶ 9, 13; ECF Nos. 22-1 at 10 (28:1-7); 22-2 at 20 (13:7-14:8). As a result, the Deputies did not park at Plaintiff's home, knock or ring the doorbell, or announce their presence. ECF No. 21 at ¶¶ 12, 13.

Deputy Logan entered the property from the lower driveway and proceeded toward the back of the home with his gun drawn. *Id.* at ¶ 14; ECF Nos. 22-1 at 9 (22:15-20); 22-2 at 20 (14:16-20). Deputy Logan checked the set of French doors at the back of the home and discovered that they were unlocked. ECF No. 21 at ¶ 19. He then shone his flashlight along the back of the home to check windows and doors and along an upper deck in the backyard. *Id.*; ECF No. 36-3 at 34. Plaintiff saw flashlight beams coming through the basement French doors and he went upstairs to the main floor to investigate. ECF No. 21 at ¶ 20.

When Deputy Logan proceeded to the back of the home, Deputy Brooke entered Plaintiff's property from the lower driveway and proceeded to the front of Plaintiff's home with his gun drawn. *Id.* at ¶ 17. Deputy Brooke illuminated the main floor with his flashlight "to see if he could see any sort of evidence inside" the home. *Id.* at ¶ 22; ECF Nos. 26 at ¶ 35; 36-2 at 24. He then turned off his flashlight, checked the front door knob, and confirmed that it was locked. ECF No. 21 at ¶ 22.

When Plaintiff arrived upstairs to investigate, Plaintiff saw another flashlight through a window in the center of the front door. *Id.* at ¶ 23; *see also* ECF No. 22-4 at 46. Plaintiff slapped the door to scare whoever was there. ECF No. 21 at ¶ 24. Plaintiff then cracked open the door, saw a gun in someone's hand, and abruptly shut the door. *Id.* at ¶ 25. Deputy Brooke turned on his flashlight and observed Plaintiff's face in the window located in the middle of the front door. ECF No. 36-2 at 24. Plaintiff screamed. ECF No. 21 at ¶ 25. Plaintiff then heard someone yell to "open the door." *Id.* Instead, Plaintiff began to retreat to the basement. *Id.* Plaintiff then heard "Sheriff's Department." *Id.* at ¶ 26. At that point, Plaintiff returned to the door, opened it, and asked what was happening. *Id.* at ¶¶ 26-27. Deputy Brooke ordered Plaintiff out of the home. *Id.* at ¶ 29.[2] By this time, Deputy Logan heard shouts and proceeded to the front yard from the lower, back of the home. ECF No. 21 at ¶ 28; 22-2 at 23 (30:2-24).

Deputy Brooke testified that his gun was in a "low ready" or "guard" position, while Plaintiff believes it was pointed directly at him until he was

---

[2]    Deputy Brooke's report claims both Deputies ordered Plaintiff out of his home. ECF No. 36-2 at 25. Deputy Logan's report indicates that when he arrived from the lower, back side of the home, Plaintiff was already outside his home with his hands in the air. ECF No. 36-3 at 34.

handcuffed.  ECF No. 21 at ¶ 29.  Plaintiff informed the Deputies that he lived there.  *Id.* at ¶ 30.  Deputy Brooke and Deputy Logan instructed Plaintiff to kneel on his front lawn and handcuffed him.  ECF No. 21 at ¶ 28.  Deputy Brooke patted down Plaintiff for weapons, but located none.  *Id.* at ¶ 31; ECF No. 37 at ¶ 56.  Plaintiff remained handcuffed as Deputy Logan took Plaintiff's wallet from his pocket to retrieve his identification, while Deputy Brooke radioed in Plaintiff's name to confirm his identity.  ECF No. 21 at ¶ 32.  Plaintiff conveyed the location of the correct house for which the Deputies were looking.  *Id.*  Deputy Brooke walked to 1306 W. Five Mile Road, where the complainant resided; Plaintiff remained handcuffed on his knees.  *Id.*  After Deputy Brooke returned to Plaintiff's home, Plaintiff was released. *Id.* at ¶¶ 32, 33.

## STANDARD OF REVIEW

Summary judgment may be granted to a moving party who demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to identify specific facts showing there is a genuine issue of material fact.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  A fact is "material" if it might affect the outcome of the suit under the governing law.

*Anderson*, 477 U.S. at 248. A dispute concerning any such fact is "genuine" only where the evidence is such that the trier-of-fact could find in favor of the non-moving party. *Id.* In ruling upon a summary judgment motion, a court must construe the facts, as well as all rational inferences therefrom, in the light most favorable to the non-moving party, *Scott v. Harris*, 550 U.S. 372, 378 (2007), and only evidence which would be admissible at trial may be considered, *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).

## DISCUSSION

### 1. Section 1983 Claims

Plaintiff alleges the Defendants trespassed on Plaintiff's property and conducted an unlawful search and seizure under 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must establish two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the alleged violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Naffe v. Frey*, 789 F.3d 1030, 1035 (9th Cir. 2015). It is undisputed that Deputies Brooke and Logan acted under color of state law.

However, qualified immunity shields government actors from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Qualified immunity balances two important interests—the need to hold

public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.*

In evaluating a state actor's assertion of qualified immunity, a court must determine (1) whether the facts, viewed in the light most favorable to the plaintiff, show that the defendant's conduct violated a constitutional right; and (2) whether the right was clearly established at the time of the alleged violation such that a reasonable person in the defendant's position would have understood that his actions violated that right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson*, 555 U.S. 223. A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015) (citing *Reichle v. Howards*, 566 U.S. 658, 132 S.Ct. 2088, 2093 (2012)). A case directly on point is not required, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Id*. (citing *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011)); *Reichle*, 132 S.Ct. at 2093. Absent controlling authority, what is necessary is "a robust 'consensus of cases of persuasive authority.'" *Al-Kidd*, 563 U.S. at 742 (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)). "If judges [] disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the

controversy." *Wilson*, 526 U.S. at 618 (observing that a split among the Federal circuits showed that the question was not clearly established).

A court may, within its discretion, decide which of the two prongs should be addressed first in light of the particular circumstances of the case. *Pearson*, 555 U.S. at 236. If the answer to either inquiry is "no," then the defendant is entitled to qualified immunity and may not be held personally liable for his or her conduct. *Glenn v. Wash. Cnty.*, 673 F.3d 864, 870 (9th Cir. 2011).

Plaintiff's two discrete claims will be analyzed separately; first, the search of the curtilage and second, the detention at the front door.

## A. <u>Warrantless Search of the Curtilage</u>

The Fourth Amendment safeguards the following protection against unreasonable search and seizure:

> The right of the people to be secure in their persons, homes, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. "[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Payton v. New York,* 445 U.S. 573, 585 (1980) (quoting *United States v. U.S. District Court,* 407 U.S. 297, 313 (1972)). At the "very core" of the Fourth Amendment "stands 'the right of a man to retreat into his own home and there be free from unreasonable governmental

intrusion.'" *Florida v. Jardines*, __ U.S. __, 133 S.Ct. 1409, 1414 (2013) (quoting *Silverman v. United States*, 365 U.S. 505, 511 (1961)). "This right would be of little practical value if the State's agents could stand in a home's porch or side garden and trawl for evidence with impunity; the right to retreat would be significantly diminished if the police could enter a man's property to observe his repose from just outside the front window." *Id*. Thus, the area "immediately surrounding and associated with the home"—the curtilage—is regarded as "part of the home itself for Fourth Amendment purposes." *Id*. at 1414. The front porch is the "classic exemplar" of the definition of curtilage, "an area adjacent to the home and to which the activity of home life extends." *Id*. at 1415.

Notwithstanding, a visitor who approaches a front door is "treated as an invitation or license to attempt an entry, justifying ingress to the home . . . ." *Id*. (quoting *Breard v. Alexandria*, 341 U.S. 622, 626 (1951)). The Supreme Court has characterized this implicit license to typically permit the visitor to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave. *Id*. Thus, an officer without a warrant is also justified in doing so "because that is 'no more than any private citizen might do.'" *Id*. at 1416 (quoting *Kentucky v. King*, 563 U.S. 452, 131 S.Ct. 1849, 1862 (2011)). "The scope of a license—express or implied—is limited not only to a particular area but also to a specific purpose." *Id*. Thus, in this setting, the Supreme Court has

endorsed viewing the subjective intent of the officer when deciding whether the actions were objectively reasonable.

Defendants explain that the Deputies acted "pursuant to the community caretaking requirement" by merely checking the home's perimeter and door handles for a potential burglar, which is no different than a neighbor reasonably checking a home after a [suspicious] car leaves. ECF No. 25 at 10.[3] So long as a "reasonably respectful person" would intrude on Plaintiff's property in the same manner, Defendants contend the Deputies' actions were permissible because they conducted "legitimate business" and entered Plaintiff's curtilage through access routes. *Id.* at 9-10.

The Supreme Court has carved out a community caretaking exception for vehicle searches.[4] *See Cady v. Dombrowski,* 413 U.S. 433, 439 (1973). "The fact that a police officer is performing a community caretaking function, however, cannot itself justify a warrantless search of a private residence." *United States v. Erickson,*

---

[3]　Defendants' repeated citation to state law is not particularly helpful when deciding these Federal Constitutional principles.

[4]　There are two other exceptions to the warrant requirement: exigency and emergency. *See United States v. Martinez,* 406 F.3d 1160, 1164 (9th Cir. 2005). Neither exception is specifically asserted here.

991 F.2d 529, 531 (9th Cir. 1993).  The governmental interest motivating the search

must be balanced against intrusion on the individual's Fourth Amendment interests.

*Erickson*, 991 F.2d at 531 (citing *Maryland v. Buie*, 494 U.S. 325, 331 (1990)); *Cady*

*v. Dombrowski*, 413 U.S. at 447 (the community caretaking search was not

unreasonable because of the concern for the safety of the general public).  "Under

this test, a search of the home or office is generally not reasonable without a warrant

issued on probable cause."  *Id.*  According to the Ninth Circuit, the "exigent

circumstances exception to the warrant requirement adequately accommodates these

competing interests."  *Erickson*, 991 F.2d at 533.

     In *Erickson*, a police officer responded to a home for a suspected burglary

during the day.  *Erickson*, 991 F.2d at 530.  The officer walked into the backyard to

investigate, but did not knock or announce.  Instead, the officer peered into the home

through a sliding glass door and determined that the home seemed secure.  *Id.*  The

officer saw a basement window covered by a black plastic sheet.  After pulling back

the plastic sheet, the officer looked inside the basement spotting numerous marijuana

plants.  The officer testified that he did so to find out whether the home had been

burglarized.  *Id.*  On appeal, the government argued that a police officer investigating

a suspected burglary was performing a "community caretaking function," which is

not subject to the probable cause requirement of the Fourth Amendment as long as

the officer acted "reasonably under the circumstances."  *Id.* at 531.  The Ninth Circuit

flatly rejected that argument and held that the need for police officers to enter homes without a warrant while investigating suspected burglaries was adequately protected by "the exigent circumstances exception to the warrant requirement" which simply did not apply there. *Id.* at 533. Thus, the warrantless search of Erickson's home constituted a severe invasion of privacy. *Id.* at 532. The Ninth Circuit then cautioned that by saying a police officer may not conduct a warrantless search of a residence merely because he is performing a community caretaking function *does not mean that such a search may never be made*. *Id.* at 533 (emphasis added). The Circuit then recited several cases, including cases from other jurisdictions, allowing some form of search during burglary investigations under the rubric of exigent circumstances.

Moreover, the Sixth Circuit endorsed just such a property check on facts not wholly dissimilar to the ones presented here. *Taylor v. Mich. Dept. of Nat. Res.*, 502 F.3d 452 (6th Cir. 2007). Officer Rose observed tire tracks and footprints near a remote log and stone home located on plaintiff's 240-acre fenced property. Suspicious of a trespasser or intruder, Officer Rose proceeded past the "No Trespassing" signs, peered into the windows of the home and garage, rattled the doorknobs of the home and garage and at the end of his "property check" left his business card in the door. *Id.* at 454. Applying the *Katz v. United States*, 389 U.S. 347 (1967), two-part "reasonable expectation of privacy" test, the Sixth Circuit held the property check did not constitute a search under the Fourth Amendment. *Id.* at

456.  The Sixth Circuit also endorsed the district court's finding that a reasonable conservation officer who conducted "a brief, minimally invasive property check, like the one Officer Rose performed, for the purpose of ensuring the security of the home would not understand such conduct to violate the Constitution." *Id*. at 458.

Plaintiff cites *Florida v. Jardines,* inter alia, for the proposition that the Deputies' entry on the property with flashlights and guns drawn was not customary and therefore was illegal as a matter of law.  ECF No. 35 at 6-7.[5]  While *Jardines* categorically held that the front porch was part of the curtilage, it did not define the outer limits of the implied license because it was undisputed there that the officer's purpose was to conduct a warrantless search with his drug-sniffing dog.

_____

[5]     Plaintiff's repeated emphasis that the Deputies entered the curtilage with guns drawn does not transform their claimed caretaking search into something more.  In fact, having their guns drawn is consistent with the specific purpose for which they claimed to be present.

That the Deputies used flashlights to illuminate darkened areas also does not constitute a search or trigger Fourth Amendment protection. *Texas v. Brown*, 460 U.S. 730, 740 (1983) (plurality opinion).  "[U]se of artificial means to illuminate a darkened area simply does not constitute a search[.]"  *Id*. (quoting *United States v. Lee*, 274 U.S. 559, 563 (1927)).

The Supreme Court has not spoken upon the propriety of a community caretaking search of the curtilage of a home. The Circuit Courts of Appeal do not appear to agree on any clearly established constitutional rights that have placed this question beyond debate. Accordingly, the Deputies are entitled to qualified immunity for conducting a search of the curtilage to ascertain whether the home was being or had been burglarized.

## B. <u>Warrantless Seizure and Excessive Force</u>

Plaintiff asserts the Deputies unlawfully detained him and used excessive force in doing so in violation of the Fourth Amendment. ECF Nos. 1 at 8-9.

Defendants contend they were "lawfully on the property and under the totality of the circumstances had reasonable suspicion to briefly detain Plaintiff based upon reasonable suspicion." ECF No. 33 at 6 (citing inter alia, *Terry v. Ohio*, 392 U.S. 1 (1968). They claim to have "articulated clear reasonable suspicion for ordering Plaintiff out of the residence based on the facts they knew at the time as well as their experience and training." *Id*. at 8. Further, they claim that the "detention was only long enough to confirm that Plaintiff was who he represented to be and that he had the authority to be at the home." *Id*. at 8-9.

As stated *supra*, at the "very core" of the Fourth Amendment "stands 'the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.'" *Florida v. Jardines*, 133 S.Ct. at 1414. For that reason,

searches and seizures inside a home without a warrant are presumptively unreasonable. *United States v. Struckman*, 603 F.3d 731, 738 (9th Cir. 2010) (citing *Payton v. New York*, 445 U.S. 573, 586 (1980)). It does not matter that the officers did not actually enter the house to make the arrest. The Ninth Circuit clarified this point over 35 years ago; "it is the location of the arrested person, and not the arresting agents, that determines whether an arrest occurs within a home." *United States v. Quaempts*, 411 F.3d 1046, 1048 (9th Cir. 2005) (quoting *United States v. Johnson*, 626 F.2d 753, 757 (9th Cir. 1980)).

Without a warrant or any other exception to the warrant requirement, the Defendants concede that Plaintiff was ordered out of his home. They justify this based on a reasonable suspicion *Terry* stop-and-frisk analogy. Yet, "the *Terry* exception to the warrant requirement does not apply to in-home searches and seizures."[6] *Struckman*, 603 F.3d at 738. While *Michigan v. Summers*, 452 U.S. 692 (1981), allows the detention of the occupant of a home, that authority only applies when a valid search warrant is being executed. There was no warrant here.

---

[6] It therefore matters not whether the totality of circumstances support reasonable suspicion or that Plaintiff's slapping the door increased the Deputies' level of suspicion.

Ordering Plaintiff out of his home is a categorical violation of his Fourth Amendment rights—whether it is called a temporary detention or arrest, it was a seizure.[7]  Summary judgment in favor of Plaintiff is appropriate on this claim.

Having concluded that there was an illegal seizure of Plaintiff's person, the Court turns to the question of whether the seizure was also unreasonable because the Deputies used excessive force.

Defendants argue that the use of force and briefly holding a suspect at gunpoint may be permissible if they are reasonable measures to ensure safety and to determine if a suspect is armed.  ECF No. 39 at 7.  Defendants support their argument with unpublished Ninth Circuit cases,[8] and a Ninth Circuit stop-and-frisk case analyzed under *Terry*, *see United States v. Alvarez*, 899 F.2d 833 (9th Cir. 1990).  The Court finds Defendants' arguments unconvincing.  *Alverez* and *Nash* involved an

---

[7]      "[W]henever a police officer accosts an individual and restrains his freedom . . . he has seized that person."  *Summers*, 452 U.S. 692, 696 n.5 (1981) (citation and internal quotation omitted).

[8]      *Tynning v. City of Desert Hot Springs*, 958 F.2d 378 (9th Cir. 1992) (unpublished); *Nash v. Vancouver Police Dep't*, 457 F.App'x 651 (9th Cir. 2011) (unpublished);

investigatory stop in a public place, not the home.  The facts in *Tynning* are not

detailed enough to provide any persuasive authority and it provides no precedence.

Pointing guns at Plaintiff,[9] ordering him out of his home at night, and onto his

knees in his own front yard to handcuff him was objectively unreasonable under the

circumstances.  The *Terry* exception to the warrant requirement does not apply to

these circumstances.  *Struckman*, 603 F.3d at 738.  Without a warrant or some other

exception to the warrant requirement, no level of suspicion could justify any use of

force here.  Summary judgment in favor of Plaintiff is also appropriate on this claim.

## C. *Monell* Liability Against Spokane County

To prevail on a claim under 42 U.S.C. § 1983 against a local government

entity, a plaintiff must prove that the entity violated his or her constitutional rights by

engaging in an "action pursuant to official municipal policy of some nature."  *Monell

v. Dep't. Soc. Servs.*, 436 U.S. 658, 691-94 (1978) (concluding that § 1983 does not

permit *respondeat superior* liability against municipalities).  To establish the

existence of an "official municipal policy," a plaintiff may articulate any of the

following four theories: (1) action pursuant to an express policy or longstanding

---

[9]     The parties dispute whether the Deputies pointed their guns at Plaintiff or

merely held them at the low and ready position.  This factual dispute may be relevant

to the jury when it determines damages.

practice or custom; (2) action by a final policymaker acting in his or her official policymaking capacity; (3) ratification of an employee's action by a final policymaker; and (4) failure to adequately train employees with deliberate indifference to the consequences. *Christie v. Iopa*, 176 F.3d 1231, 1235-40 (9th Cir. 1999). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (citation omitted).

Defendants contend that Plaintiff has failed to establish the existence of a departmental custom or policy sufficient to support *Monell* liability. ECF No. 25 at 7. Plaintiff argues that Spokane County maintains a "policy and practice of conducting warrantless searches with guns drawn in residential curtilage without probable cause or reasonable suspicion of a crime," which caused his Fourth Amendment rights to be violated. ECF No. 35 at 2. Plaintiff explains that (1) Deputy Brooke has searched curtilages without a warrant in the past; (2) Sergeant Gere would expect his deputies to do the same in the future; and (3) Deputy Logan would have searched Plaintiff's property in the same manner even if he had located the correct subject property. *Id.* at 5.

Plaintiff's evidence is predicated on speculative, non-descript testimony. Specifically, in response to a series of hypotheticals, Sergeant Gere testified that "the

public has an expectation that [officers] investigate and prevent crime" and it would be reasonable for officers to check other homes to make sure people were not victimized. ECF No. 22-6 at 59 (33:20-35:2), 61 (53:8-54:10). In response to a burglary hypothetical, Sergeant Gere testified that officers should check or "make some inquiry" as to whether another home was burglarized. *Id.* at 60 (51:15-52:24).

Deputy Logan testified that he would have checked Plaintiff's backyard even if he knew the location of the correct home. ECF Nos. 21 at ¶ 37; 22-2 at 22 (26:16-27:22). Deputy Brooke testified that he believed his actions during the underlying incident comported with departmental policy. ECF Nos. 21 at ¶ 35; 22-1 at 16 (62:3-6). In response to a suspected burglary hypothetical, Deputy Brooke testified that he would check doors and confirmed he has done so in the past. ECF Nos. 21 at ¶ 37; 22-1 at 17 (65:17-24).

Plaintiff has not shown a pervasive pattern or practice of officers conducting illegal warrantless searches and no policy or practice concerning warrantless detentions of occupants of homes. Without more, Plaintiff has not provided sufficient evidence to support his *Monell* claim against Spokane County. The Court finds that Plaintiff has failed to establish a practice or custom causing a Constitutional deprivation.

Accordingly, Defendants' motion for summary judgment is GRANTED in part and Plaintiff's § 1983 claims against Spokane County are dismissed.

## 2. State Law Claims

Defendants seek summary judgment on all of Plaintiff's state law claims. ECF No. 25 at 14-19. Their arguments primarily rely on the assumption that their actions were lawful and therefore privileged.

### A. Assault and Battery

Battery is an intentional act defined as "harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff or a third person to suffer such a contact" under Washington law. *McKinney v. City of Tukwila*, 103 Wash. App. 391, 408 (2000) (citation omitted). Assault is committed even if there has been no bodily contact, if an individual has an intent to put another person in immediate apprehension of harmful or offensive contact and causes that person apprehension. *Brower v. Ackerley*, 88 Wash. App. 87, 92-93 (1997) (citing Restatement (Second) of Torts § 21). Washington recognizes a form of qualified immunity for law enforcement officers, but immunity is not "available for claims of assault and battery arising out of the use of excessive force to effectuate an arrest." *Staats v. Brown*, 139 Wash.2d 757, 780 (2000) (citation omitted). The standards for adjudicating Section 1983 claims grounded on constitutionally prohibited excessive force are the same standards that apply to both state law assault and battery claims. *See Saman v. Robbins*, 173 F.3d 1150, 1156-57 (9th Cir. 1999) (treating Section 1983 and state law battery claim as synonymous).

As discussed above, the Court finds that there are no genuine issues of material fact regarding the Deputies' use of excessive force against Plaintiff. Accordingly, the Court denies Defendants' request for summary judgment as to Plaintiff's assault and battery claims.

## B. Outrage/Intentional Infliction of Emotional Distress

In Washington, the tort of outrage, or intentional infliction of emotional distress ("IIED"), requires a plaintiff to establish: (1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) actual result of severe emotional distress. *Kloepfel v. Bokor,* 149 Wash.2d 192 (2003); *Reid v. Pierce County,* 136 Wash.2d 195 (1998); *Grimsby v. Samson,* 85 Wash.2d 52 (1975). Notwithstanding, a plaintiff cannot recover on an IIED theory when damages for mental or emotional distress are already recoverable under an assault or battery claim. *Rice v. Janovich,* 109 Wash.2d 48 (1987) ("outrage should allow recovery only in the absence of other tort remedies") (citing Restatement (Second) of Torts § 46, comment b, at 72 (1965)); *see also Bankhead v. City of Tacoma,* 23 Wash. App. 631 (1979) (affirming dismissal of outrage claim on motion for summary judgment because plaintiff had a viable assault claim).

Defendants argue that Plaintiff cannot prove the required "outrageousness" or establish severe emotional distress. ECF No. 25 at 19. Notwithstanding Defendants' argument, Plaintiff's IIED claim must be dismissed because it is subsumed within his

state law assault and battery claims. The Court therefore grants Defendants' motion

for summary judgment in part as to Plaintiff's outrage/IIED claim.[10]

### C. False Arrest and Imprisonment

A false arrest occurs when a person with actual or pretended legal authority to

arrest unlawfully restrains or imprisons another person. *Bender v. City of Seattle*, 99

Wash.2d 582, 590 (1983). However, "false imprisonment may exist entirely apart

from any purported process of law enforcement . . . ." *Id.* at 591 (internal citations

omitted)); *see also Youker v. Douglas Cty.*, 162 Wash. App. 448, 465 (2011) (citation

omitted) ("The gist of false arrest and false imprisonment is essentially the same, viz.,

the unlawful violation of a person's right of personal liberty, and a false

imprisonment occurs whenever a false arrest occurs."). The existence of "probable

cause is a complete defense to an action for false arrest and imprisonment." *Hanson

v. City of Snohomish*, 121 Wash.2d 552, 563 (Wash. 1993) (en banc) (citing *Bender*,

99 Wash.2d at 592).

Here, Plaintiff's state law claims of false arrest and false imprisonment hinge

on a finding of probable cause, of which the Court finds none. For the same reasons

---

[10] Damages for emotional distress may be awarded by a jury as part of Plaintiff's

assault and battery damages. *See Bankhead*, 23 Wash. App. at 638.

that warrant summary judgment on Plaintiff's § 1983 unlawful seizure/arrest claim against Deputy Logan and Brooke, Defendants' request for summary judgment dismissing Plaintiff's state law claims for false arrest and false imprisonment are denied.

### D. Negligence

Defendants also move for summary judgment on Plaintiff's negligence claim. ECF No. 25 at 16-17. Plaintiff alleges that Defendants breached their duty (1) to make reasonable assurance that a property being searched is the correct property; (2) to be free from a negligent, unwarranted, and/or unlawful violation of personal liberty rights; (3) to ensure probable cause to effectuate an arrest and detention; (4) to be free from restraint, detention, and force without legal authority; (5) to be free from unwarranted/unlawful imprisonment; (6) to exercise and practice law enforcement work in a non-negligent/tortious manner; and (7) to act and exercise the degree of care as others would act and exercise in the same or similar circumstances. ECF No. 1 at ¶ 60.

Plaintiff's negligence claim is analogous to the analysis utilized under the Fourth Amendment and significantly overlaps with Plaintiff's other state law claims, as explained above. Because the Court has already determined that ordering Plaintiff out of his home is a violation of his Fourth Amendment rights, the Court denies summary judgment on this claim as well.

### 3. Motion to Exclude Expert Testimony

Defendants also move to exclude the testimony of Plaintiff's expert, Sue Peters. ECF No. 23. The crux of Defendants' argument is that Ms. Peter's opinions are not specialized knowledge required to assist the trier of fact and her conclusions are improper interpretation of the facts. *Id.* Plaintiff argues that Ms. Peters accepted Defendants' version of the facts and only questions Defendants' tactics and actions. ECF No. 28 at 3-4.

The Court has thoroughly reviewed Ms. Peter's opinions and has serious reservations about their admissibility. Additionally, the complexion of the case has dramatically changed with this Order. Accordingly, by July 11, 2017, Plaintiff shall designate those precise opinions of Ms. Peters that he still seeks to introduce and Defendants shall file on or before July 24, 2017, any supplemental brief seeking to exclude those opinions. Those objections to the expert's testimony will be heard at the Pretrial Conference.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment (ECF No. 20) is **GRANTED** in part, in favor of Plaintiff on his seizure and excessive force claims against Defendants Brooke and Logan brought under 42 U.S.C. § 1983.

2. Defendants' Motion for Summary Judgment (ECF No. 25) is **GRANTED** in part; it is granted in favor of Defendants Brooke and Logan on

Plaintiff's unreasonable search claim brought under 42 U.S.C. § 1983; it is granted in favor of Defendant Spokane County on Plaintiff's § 1983 *Monell* liability claims; it is granted in favor of Defendants with respect to Plaintiff's intentional infliction of emotional distress and outrage claims; and it is **DENIED** with respect to Plaintiff's remaining state law claims.

       3.     Defendants' Motion to Exclude Plaintiff's Expert Testimony (ECF No. 23) is reserved until the pretrial conference hearing. By July 11, 2017, Plaintiff shall designate those precise opinions of Ms. Peters that he still seeks to introduce and Defendants shall file on or before July 24, 2017, any supplemental brief seeking to exclude those opinions. Plaintiff may respond according to Local Rule 7.1.

     The District Court Executive is directed to enter this Order and provide copies to counsel.

**DATED** June 27, 2017.



THOMAS O. RICE
Chief United States District Judge

ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 27